**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>870 MIDDLE ISLAND PRODUCE CORP.,<br><br>                    Debtor. | Chapter 11<br><br>Case No.: 19-71008 (AST) |
| In re:<br><br>379 HORSEBLOCK PRODUCE CORP.,<br><br>                    Debtor. | Chapter 11<br><br>Case No.: 19-71009 (AST) |

**MEMORANDUM OF LAW**
**IN OPPOSITION TO DEBTORS' CASH COLLATERAL MOTIONS**

Key Food Stores Co-operative, Inc. ("Key Food"), through its undersigned attorneys, submits this memorandum of law in opposition to the cash collateral motions (the "Motions") filed by 870 Middle Island Produce Corp. ("Middle Island") and 379 Horseblock Produce Corp. ("Horseblock", and collectively with Middle Island, the "Debtors").

Key Food incorporates in this memorandum of law the facts and arguments set forth in the certification of Sharon Konzelman filed in in support of Key Food's stay relief motions and the affidavit of Sharon Konzelman filed in opposition to the Motions.

    **a. Key Food Does Not Consent To Either Of The Debtors' Use Of Cash Collateral And Neither Has Met Its Burden Of Adequate Protection**

Under 11 U.S.C. § 363(c), a debtor "may not use, sell, or lease cash collateral" in the ordinary course of business, unless the secured creditor consents or court authorization is obtained.

Under 11 U.S.C. § 363(b), a debtor may use cash collateral other than in the ordinary course of business, subject to objection by the secured creditor under Section 363(e).

1

11 U.S.C. § 363(e) provides that when a creditor objects to a debtor's use of its cash collateral, the bankruptcy court "shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."

It is well settled that the debtor bears the burden to demonstrate that a creditor is adequately protected. *In re South Side House, LLC*, 474 B.R. 391, 408 (Bankr. E.D.N.Y. 2012), *citing In re Constable Plaza Assoc.*, 125 B.R. 98, 104 (Bankr. S.D.N.Y. 1991).

Once a secured creditor has established that its interests in a debtor's property is valid, the burden shifts to the debtor to prove that the secured creditor will receive the value for which it bargained. *In re 680 Fifth Ave. Assocs.,* 154 B.R. 38, 43 (Bankr. S.D.N.Y. 1993) (citations omitted).

As is clear from the Debtors' motions, the Debtors' schedule filed to date, David Corona's testimony and Sharon Konzelman's certification and affidavit, Key Food holds a valid, perfected, first priority security interests in substantially of the Debtors' assets to secure an aggregate debt in excess of $5,719,668.08.

In *In re O.P. Held, Inc.*, 74 B.R. 777, 782-783 (Bankr. N.D.N.Y. 1987), the Court held that adequate protection requires that "the secured lender be assured of the maintenance and thus recoverability of its lien value in the interim period between the date of filing and the confirmation of the plan of reorganization…." *Accord In re Elmira Litho, Inc.*, 174 B.R. 892, 902 (Bankr. S.D.N.Y. 1994) (adequate protection, as used in 11 U.S.C. § 362(d)(1), "includes the right of a secured creditor to have the security applied in payment of the debt upon completion of the reorganization; and that that interest is not adequately protected if the security is depreciating during the term of the stay [citations omitted]." *See also In re CPJFK, LLC*, 496 B.R. 290, 305 (Bankr. E.D.N.Y. 2011) (holding that hotel did not provide adequate protection for continued use of cash collateral where it was operating at a deficit, was not paying administrative expenses, debt

service, real estate taxes, or rent, was "just basically meeting the expenses as they're coming due", and there was no evidence of an equity cushion.)

During his deposition, David Corona could not explain a coherent restructuring strategy for either of the Debtors, and could not explain how either of the Debtors would be able to pay creditors what they would receive if the Debtors' assets were liquidated, or how either debtor could assume its lease and cure the defaults thereunder.

The budgets submitted by each of the Debtors also demonstrate a complete inability to propose a confirmable plan of reorganization in a reasonable time or the means to assume their leases and pay creditors what they are entitled to receive.

The Debtors' secured debts far exceed the value of their assets.

The Debtors also have not provided any analysis of their operations after March 31, 2019.

Neither of the budgets includes debt service.

Neither of the budgets makes any allowance for the Debtors' obligations under the Perishable Agricultural Commodities Act, 7 U.S.C. §§ 499(a), *et seq*. ("PACA") (discussed below).

Neither of the Motions includes an analysis of the collateral pledged to Key Food during their continued operations.

Instead, the Debtors' budgets reflect that they are barely staying afloat, even while they continue to operate in violation of PACA and fail to pay any debt service. Horseblock's budget also reflects an over $10,000 drop in net income from February to March.

In addition, while both Debtors ceased making payments to Key Food for merchandise purchases, and payments to their other merchandise suppliers, the aggregate unsecured debt for each of the Debtors significantly exceeded their valuation of cash and inventory. The financial

picture is even more dire when one accounts for the Debtors' failures to pay their landlords over the same period of time.

Therefore, Key Food submits that the Debtors have failed to meet their burden of proof and that its security interests in the Debtors' assets are not and cannot be adequately protected by the Debtors' continued operations.

### b. The Debtors Have Violated PACA And Are Continuing To Do So

7 U.S.C. § 499e(c)(2) provides:

> Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities . . . until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents. . .

"Section 499e(c)(2) defines the corpus of the trust as all produce received from sellers, including 'all inventories of food or other products derived from' the produce, 'and any receivables or proceeds from the sale of such' produce or its derivative products." *"R" Best Produce, Inc. v. Shulman-Rabin Mktg., Corp.*, 467 F.3d 238, 241 (2d. Cir. 2006), *quoting* 7 U.S.C. § 499e(c)(2).

In *C.H. Robinson Co. v. Alanco Corp.*, 239 F.3d 483, 486 (2d Cir. 2001), the Court provided:

> PACA "imposes a 'non-segregated floating trust' on the commodities and their derivatives, and permits the commingling of trust assets without defeating the trust . . . . Through this trust, the sellers of the commodities maintain a right to recover against the purchasers superior to all creditors, . . ." *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1067 (2d Cir. 1995).

A PACA trust is established when:

> . . . (1) the commodities sold were perishable agricultural commodities; (2) the purchaser of the perishable agricultural commodities was a commission merchant, dealer or broker; (3) the transaction occurred in interstate or foreign commerce; (4) the seller has not received full payment on the transaction; and (5) the seller

4

preserved its trust rights by giving written notice to the purchaser of its intention to do so.

*A&J Produce Corp. v. Chang*, 385 F. Supp. 2d 354, 358 (S.D.N.Y. 2005); *Belleza Fruit, Inc. v. Suffolk Banana Co.*, 2012 U.S. Dist. LEXIS 93117, *20-21 (E.D.N.Y. 2012), *quoting Taylor & Fulton*, 2011 U.S. Dist. LEXIS 144996, *5 (E.D.N.Y. 2011), *quoting S. Katzman Produce, Inc. v. Won*, 2009 U.S. Dist. LEXIS 69465, *4 (E.D.N.Y. 2009).

The produce receiver is required to hold in trust the produce itself, products derived therefrom, as well as any receivables or proceeds from sales thereof, until full payment is made to the seller. *In re Kornblum & Co.*, 81 F.3d 280, 284 (2d Cir. 1996).

PACA trustees "are required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities." *"R" Best Produce, Inc.*, 67 F.3d at 242, *quoting C.H. Robinson Co. v. Alanco Corp.*, 239 F.3d at 486, *citing* 7 C.F.R. § 46.46(d)(1).

In the context of a bankruptcy, PACA trust property is not property of a debtor's bankruptcy estate and must be immediately segregated for payment to PACA suppliers. *In re Kornblum & Co.,* 81 F.3d at 284; *Morris Okun, Inc. v. Harry Zimmerman, Inc.,* 814 F. Supp. 346, 348 (S.D.N.Y. 1993). When a produce supplier is not paid, it is entitled to immediate relief in the form of segregation and payment of trust assets. *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 156-159 (11th Cir. 1990); *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106, 108 (2d Cir. 1987); *In re Kelly Food Products, Inc.*, 204 B.R. 18, 22 (Bankr. C.D. Ill. 1997) (debtor required to immediately pay trust assets to PACA trust creditors); *In re W.L. Bradley, Inc.*, 75 B.R. 505, 514 (E.D. Pa. 1987) (automatic stay lifted and immediate payment of trust proceeds required to the PACA trust creditors).

7 U.S.C. § 499a(b)(6) provides that, subject to the limitations contained therein, a "dealer" is "any person engaged in the business of buying or selling in wholesale or jobbing quantities, as defined by the Secretary, any perishable agricultural commodity in interstate or foreign commerce . . . ."

USDA regulations define "[w]holesale or jobbing quantities" of produce as aggregate quantities of all types of produce totaling one ton (2,000 pounds) or more in weight in any day shipped, received, or contracted to be shipped or received." *In re Magic Restaurants, Inc.*, 205 F.3d 108, 111 (3d Cir. 2000); *A&J Produce Corp.*, 385 F. Supp. 2d at 359.

7 U.S.C. § 499a(b)(11) defines a "retailer" as "a person that is a dealer engaged in the business of selling any perishable agricultural commodity at retail."

Under PACA, a retailer will be considered a "dealer" when such retailer's "invoice cost of [its] purchases of perishable agricultural commodities in any calendar year are in excess of $230,000.00." *Maspeth Trading, Inc. v. Ou Jiang Supermarket, Inc*., 2014 U.S. Dist. LEXIS 99835 *9-10 (E.D.N.Y. 2014); 7 U.S.C. § 499a(b)(6).

Key Food submits that the Konzelman Affidavit establishes its PACA claims against each of the Debtors.

David Corona acknowledged at his deposition on February 21, 2019 that both of the Debtors owed amounts to Key Food for pre-petition sales of produce which qualify under PACA.

As of the date the respective produce was shipped and received by Middle Island and Horseblock, each became statutory trustees of PACA trusts and were charged with fiduciary duties to preserve the PACA trusts until all amounts owed to PACA creditors, including Key Food, were repaid in full.

The Debtors' Motions and supporting budgets confirm that neither of the Debtors has funds freely available to satisfy the pre-petition PACA claims.

The Debtors' schedules, and confirmed by David Corona at his deposition, make clear that both Debtors owe amounts for pre-petition PACA claims.

David Corona acknowledged in his deposition that the Debtors commingled the PACA trust property and neither of the Debtors has established a segregated account to fund a PACA trust.

David Corona further acknowledged in his deposition that the Debtors have purchased produce post-petition that has not been paid.

"PACA regulations define 'dissipation' as 'any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid suppliers, sellers, or agents to recover money owed in connection with produce transactions.'" *Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 706 (2d Cir. 2007), *quoting* 7 C.F.R. § 46.46(a)(2). "Because of the requirement that a PACA trustee maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers, the use of trust assets for any purpose other than paying the beneficiaries constitutes dissipation." *Belleza Fruit, Inc. v. Suffolk Banana Co.*, 2012 U.S. Dist. LEXIS 93117 at *35 (payment of business expenses including payroll prior to paying PACA debt constituted dissipation). *See also Bonell Produce Co. v. Chloe Foods, Inc.,* 2008 U.S. Dist. LEXIS 94476, *11 (E.D.N.Y. Nov. 19, 2008) (holding that ". . . even payment for everyday business expenditures constitutes [PACA trust] dissipation" and enjoining defendant ". . . from removing, withdrawing, transferring, assigning or selling to any other person or entity the proceeds from sales of any or all existing or future inventories of food procured . . ., including, but not limited to inventory on hand, perishable agricultural commodities, or other products derived from perishable agricultural commodities, or receipts of payments for such commodities sold prior to the date of th[e] order." )   The utilization of PACA trust assets to acquire another

asset without maintenance of reserves sufficient to satisfy all unpaid PACA vendors constitutes PACA trust dissipation. *In re Al Nagelberg & Co.*, 84 B.R. 19, 21 (Bankr. S.D.N.Y. 1988).

Key Food maintains that in light of its lien, neither of the Debtors can fund a trust for the benefit of pre-petition or post-petition PACA claims and both Debtors are operating in violation of PACA.

For argument sake, even if either debtor could use their funds for a PACA trust, each of the Debtors' petition schedules, Motions and budgets, as well as the deposition testimony of David Corona, clearly indicate that the Debtors do not have sufficient funds freely available to do so and continue to dissipate the trust absent immediate segregation and repayment of PACA claims.

### c. Conclusion

Key Food respectfully requests that the Court deny the Motions and grant such further relief as it deems just and proper.

Respectfully submitted,

Dated: February 25, 2019

BODNER LAW PLLC

By: */s/ Jonathan S. Bodner*
Jonathan S. Bodner, Esq.
Harry M. Gutfleish, Esq.
40 Cutter Mill Road, Suite 301
Great Neck, New York 11021
(516) 444-3923
jbodner@bodnerlawpllc.com
hgutfleish@bodnerlawpllc.com

*Attorneys for Key Food Stores Co-operative, Inc., 870 Produce Corp., and 379 Plaza Produce Corp.*